UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **NC CAPITAL, LLC,** | Case No. |
| **Plaintiff,** | Hon. |
| vs. | Magistrate Judge |
| **METABOLOMIC TECHNOLOGIES, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## COMPLAINT

Plaintiff NC Capital, LLC ("NC Capital"), by and through its undersigned counsel, brings this Complaint against Defendant Metabolomic Technologies, Inc. ("MTI").

**I.      INTRODUCTION**

1. NC Capital, a family-owned investment firm that invests in emerging healthcare companies, was deceived into making an over $2.5 million investment in MTI based on misrepresentations MTI made regarding its leading product.

2. MTI, a company that specializes in metabolomics, *i.e.*, the measurement of "metabolites," or small molecules that result from a metabolic reaction found in human specimens, represented to NC Capital that its leading product, PolypDx, has the ability to ascertain through a urine sample whether a given patient has pre-cancerous colorectal polyps.  If it worked, such a test would be revolutionary given its non-invasiveness.

3. But PolypDx does not work and MTI knows it.  Instead—and directly contrary to MTI's representations to NC Capital—the test primarily relies on ordinary clinical factors (sex, age, and smoking status) that any physician can ascertain during a routine check-up, not selected

3708435.3

metabolites present in a given patient's urine sample. As a result, there is *zero clinical utility* for the product in its current state—there is no reason why a physician would use it, no basis for the FDA to approve it, and no basis for the Centers for Medicare & Medicaid Services ("CMS") to issue reimbursements in connection with the test. In short, MTI's leading product—the viability of which was the sole basis for NC Capital's investment—is commercially useless.

4. MTI, in a desperate pitch to obtain funding from NC Capital to avoid having to wind down its business, fraudulently induced NC Capital to serve as the lead investor in its most recent round of major fundraising in 2019-2020 by misrepresenting the true nature of PolypDx. MTI's internal data and the prior work of its chief scientists prove that MTI's representations to NC Capital regarding PolypDx were unequivocally false at the time they were made.

5. Further, in its most recent shareholder communication from April 2021, MTI finally admitted what it has known all along: that MTI cannot "commercialize" PolypDx "successfully in its current format."

6. As set forth in detail below, NC Capital is entitled to over $2.5 million in damages both under federal securities law and Illinois state law.

## II. THE PARTIES

7. Plaintiff NC Capital is a Delaware limited liability company, with its principal place of business in Galesburg, Illinois. NC Capital primarily invests in emerging healthcare companies.

8. Defendant MTI is a Canadian corporation with its principal place of business in Edmonton, Alberta.

## III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the first claim for relief in this

action, because it alleges a violation of the federal Securities Exchange Act. The Court has supplemental subject matter jurisdiction over the remaining claims for relief under 28 U.S.C. § 1367 because they are so related to the claim within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Diversity jurisdiction also exists pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship because Plaintiff NC Capital is a Delaware limited liability company, its members are domiciled in Illinois, and its principal place of business is in Illinois. Defendant MTI is a Canadian corporation with its principal place of business in Edmonton, Alberta. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

11.     This Court has personal jurisdiction over Defendant MTI, and venue is proper in this District pursuant to 28 U.S.C. § 1391, because MTI has breached duties to Plaintiff NC Capital in this District and a substantial part of MTI's wrongful conduct giving rise to NC Capital's claims occurred in this District.

IV.     **FACTUAL ALLEGATIONS**

    A.     **MTI's Purported Business**

12.     According to its website, MTI specializes "in the development of novel metabolomics-based diagnostics for the healthcare market." "Metabolomics" involves the measurement of "metabolites," or small molecules that result from a metabolic reaction found in human specimens.

13.     MTI's leading product is PolypDx, a urine screening test that purports to detect pre-cancerous colorectal polyps through the presence of certain metabolites. The test is advertised as a "more patient-friendly, accurate and inexpensive population-based screening test

for colorectal cancer."

14. The potential clinical utility of such a test, if it worked, is that it would detect pre-cancerous colorectal polyps through a urine sample, as opposed to demographic and other clinical risk factors that can be identified by physicians without a test.

15. The PolypDx test has been sold in the U.S. since May 1, 2016, originally in a partnership with a Pennsylvania-based clinical laboratory.

### B. MTI's Misrepresentations to NC Capital Regarding PolypDx

16. Beginning in and about May 2019, NC Capital and MTI began having discussions about NC Capital potentially investing in MTI.

17. On May 27, 2019, NC Capital spoke over the phone with MTI's then-CEO and one of its directors to discuss the potential investment. At the time, NC Capital and its principals were in Galesburg, Illinois, MTI's CEO was in Alberta, Canada, and the other MTI director was in New York. MTI represented to NC Capital that it needed additional investment capital in order to remain a going concern and that it only had liquidity to ensure its viability until October 2019. In other words, without an immediate infusion of cash, MTI would have to wind up its operations.

18. During the May 27, 2019 telephone call, MTI (through its then-CEO and one of its directors), as means to induce NC Capital to make a substantial investment in MTI, made a series of misrepresentations regarding the PolypDx test, its leading product. MTI represented that, with respect to PolypDx, it had a "locked-in" algorithm. There is no mistaking what MTI meant by its use of this term. It is a term of art, often referenced by the FDA in connection with its approvals of medical tests, to mean a finalized algorithm. In this context, MTI was representing that it had developed a finalized algorithm for the detection of selected urine

3708435.3                                    4

metabolites that correspond to pre-cancerous colorectal polyps, and that no further adjustments to the algorithm were necessary before proceeding to commercialization and seeking FDA approval.

19. Then, on June 1, 2019, MTI's then-CEO met with NC Capital and certain of its principals in person in St. Louis, Missouri, also to solicit an investment from NC Capital. NC Capital's principals pressed MTI's then-CEO on the nature of the algorithm used by PolypDx to detect key urine metabolites. MTI's then-CEO asserted that MTI could not share its algorithm due to purported concerns of intellectual property theft, but reiterated that "the majority of the work" in the algorithm was being performed by the selected urine metabolites, as opposed to ordinary demographic and clinical risk factors (like sex, age, and smoking status) that are observable through a routine check-up.

20. In response, NC Capital made clear to MTI's then-CEO that it would be relying on this information in investing in MTI. That is because, as NC Capital explained at the June 1, 2019 meeting, if MTI's representations were not true, then PolypDx would not have a sufficient advantage over ordinary clinical markers used to detect the risk of colorectal cancer in a given patient and therefore the test would have little to no clinical utility. Further, if the representations were not true, as NC Capital explained to MTI at the meeting, it would be highly unlikely for the FDA to approve the test or for CMS to approve reimbursements in connection with the test. MTI indicated that it understood these concerns and reiterated to NC Capital that its representations regarding the nature and functionality of PolypDx and its underlying algorithm were true. MTI's then-CEO further reassured NC Capital that the PolypDx algorithm was based on years of metabolomics research and had a clinically significant advantage over the use of ordinary clinical factors to detect colorectal cancer.

21. At the end of the meeting, and based on MTI's aforementioned representations, NC Capital committed to invest in MTI as part of MTI's next two investment tranches, and agreed to be the lead investor in the first tranche. NC Capital's agreement on the valuation of the securities it would purchase from MTI also was based on the aforementioned representations.

22. On June 2, 2019, NC Capital signed a term sheet with MTI. On August 7, 2019, NC Capital contracted to purchase securities in MTI in two tranches of $1 million (USD) each, including warrants of $560,000 upon the funding of the two investment tranches. The principal who entered into the term sheet and securities contract on behalf of NC Capital was in Galesburg, Illinois at the time of executing those documents.

23. NC Capital invested $1 million into MTI as part of the first investment tranche on August 30, 2019. The $1 million was transferred to MTI from a bank account located in Illinois.

24. NC Capital invested the additional $1 million into MTI as part of the second investment tranche on May 29, 2020. The $1 million also was transferred to MTI from a bank account located in Illinois.

25. NC Capital exercised warrants to purchase additional securities in MTI in the amount of $560,000 on October 22, 2020. The $560,000 also was transferred to MTI from a bank account located in Illinois. All told, NC Capital invested $2,560,000 in MTI and currently owns over 15% of MTI.

26. Each of these investments was made by NC Capital in reliance on the representations made by MTI set forth above.

C. **MTI's Representations Regarding the PolypDx Algorithm Were False.**

27. NC Capital discovered in late October and early November 2020 that MTI's representations regarding PolypDx, and its underlying algorithm, were categorically false.

28. Contrary to MTI's repeated representations, NC Capital discovered that ordinary demographic and clinical risk factors, observable by any physician in a routine clinical setting, were doing the bulk of the work in the PolypDx algorithm. NC Capital's discovery was based, in part, on internal company data that existed prior to NC Capital's investment in MTI and that revealed the true nature of the algorithm. NC Capital further discovered at this time that current and former MTI data scientists, including the scientist responsible internally for developing the PolypDx algorithm, had conveyed to MTI's management as early as *2012* (well before NC Capital's investment in MTI) that the PolypDx algorithm did not primarily rely on selected urine metabolites and did not produce results superior to those produced by ordinary demographic and clinical risk factors alone. Despite MTI's knowledge regarding the true nature of PolypDx, in order to induce NC Capital to invest in the company, MTI consistently made representations to NC Capital that contradicted what MTI knew to be true about its failed product.

29. Had NC Capital been made aware of the above facts regarding the true nature of PolypDx, it would not have invested in MTI.

30. Further, in a "Shareholder Update" dated April 14, 2021, MTI informed its shareholders, including NC Capital, *for the first time*, that PolypDx is not commercially viable because it does not provide a sufficient improvement over clinical feature markers, *i.e.*, the very concern that NC Capital raised with MTI in the parties' pre-investment meetings. Specifically, the Shareholder Update stated:

- "MTI believes that its prospects for *successfully commercializing* PolypDx would benefit from *undertaking additional work* to improve the PolypDx test and its algorithm."

- "[T]he degree of improvement provided by the specific metabolites

appears to be *insufficient to commercialize the product successfully in its current format*."

31. Translation: (1) there is no "locked in" algorithm for PolypDx; (2) PolypDx is not a viable product, and there is no reason any physician would use it; and (3) there is no basis for the FDA to authorize its use or for CMS to authorize reimbursements for its use.

32. The sugarcoated Shareholder Update issued by MTI, however, was merely an effort on the part of MTI to cover its tracks, as it had known *prior to NC Capital's investment*—by virtue of internal data and analyses, and the work of its lab scientists—that its representations to NC Capital regarding PolypDx were manifestly false. Indeed, MTI's former CEO, who made certain of the misrepresentations to NC Capital identified above, led the development of the fraudulent algorithm underlying PolypDx, and therefore made these representations despite knowing them to be false at the time.

33. Each of these recent admissions by MTI directly contradicts the representations that it made to NC Capital during the May to June 2019 timeframe to induce NC Capital to invest in MTI, and each amounts to a separate and independent admission of fraud.

34. Had NC Capital been made aware of any of the above facts MTI has now belatedly admitted to, it would not have invested in MTI.

V. **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**(Violation of Section 10(b) of The Securities Exchange Act of 1934 and Rule 10-b5)**

35. NC Capital realleges and incorporates by reference the preceding paragraphs 1 through 34 as though fully set forth herein.

36. This cause of action is based upon Section 10(b) of the Exchange Act, 15 U.S.C.

§ 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

37. MTI disseminated or approved the false statements specified above in paragraphs 16 through 26, which contained misrepresentations, and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, as set forth in paragraphs 27 through 34 above.

38. MTI therefore violated section 10(b) of the Exchange Act in that it:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon NC Capital.

39. MTI acted with scienter in that it knew the statements and representations made by MTI to NC Capital regarding MTI's leading product, PolypDx, were materially false and misleading, because, as set forth in paragraph 27 through 34 above, MTI knew at the time it made those representations that they were false and that the underlying company data, analyses, and work of its lab scientists contradicted those representations.

40. NC Capital reasonably relied on MTI's representations in purchasing $2,560,000 in securities in MTI. But for MTI's representations and had NC Capital been aware of the falsity of MTI's representations, NC Capital would not have made any investments in MTI.

41. As a direct and proximate result of MTI's misrepresentations, NC Capital paid far more for its interest in MTI than that interest is worth, NC Capital's interest has been significantly devalued, and NC Capital's ability to find subsequent purchasers has significantly

diminished.

42. As a direct and proximate result of MTI's conduct, NC Capital has suffered damages in an amount to be established at trial.

## SECOND CAUSE OF ACTION

**(Violation of the Illinois Securities Law of 1953, 815 ILCS 5/12, *et seq.*)**

43. NC Capital realleges and incorporates by reference the preceding paragraphs 1 through 42 as though fully set forth herein.

44. Under the Illinois Securities Law of 1953 ("Illinois Securities Law"), it is a violation for any person to:

- Engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof. 815 ILCS 5/12(F).

- Obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. 815 ILCS 5/12(G).

- Employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly. 815 ILCS 5/12(I).

45. As alleged in paragraphs 16 through 34, MTI (a) made misstatements or omissions, (b) of material fact, (c) in connection with the purchase or sale of securities, (d) upon which NC Capital reasonably relied.

46. NC Capital has been harmed as a direct and proximate result of MTI's violations

of Sections 12(F), 12(G), and/or 12(I) of the Illinois Securities Act, and has suffered damages and continues to suffer damages in an amount to be established at trial.

## THIRD CAUSE OF ACTION

### (Fraud under Illinois Law)

47. NC Capital realleges and incorporates by reference the preceding paragraphs 1 through 46 as though fully set forth herein.

48. As alleged more fully above in paragraphs 16 through 34, the representations made by MTI regarding its leading product, PolypDx, were false and misleading when made and were known to MTI to be false and misleading when made.

49. The representations were made with the intent to induce NC Capital to purchase securities in MTI in the amount of $2,560,000.

50. NC Capital reasonably relied on MTI's false representations. At the time MTI's representations were made, NC Capital was unaware of their falsity. Had NC Capital known that the representations made by MTI were false, it would not have relied on the representations and purchased $2,560,000 in securities from MTI.

51. As a direct and proximate result of relying on MTI's false representations, NC Capital has suffered damages and continues to suffer damages in an amount to be established at trial.

52. MTI acted willfully, oppressively, maliciously, and in wanton and conscious disregard of the rights of NC Capital. Accordingly, punitive damages should be assessed against MTI in an amount that will be sufficient to discourage it and others from engaging in such fraudulent conduct in the future.

## FOURTH CAUSE OF ACTION

**(Negligent Misrepresentation under Illinois Law)**

53. NC Capital realleges and incorporates by reference the preceding paragraphs 1 through 52 as though fully set forth herein.

54. As alleged more fully above in paragraphs 16 through 34, the representations made by MTI regarding its leading product, PolypDx, were false and misleading when made and were known to MTI to be false and misleading when made, and MTI did not have reasonable grounds for believing the representations were true when made.

55. The representations were made with the intent to induce NC Capital to purchase securities in MTI in the amount of $2,560,000.

56. NC Capital reasonably relied on MTI's false representations. At the time MTI's representations were made, NC Capital was unaware of their falsity. Had NC Capital known that the representations made by MTI were false, it would not have relied on the representations and purchased $2,560,000 in securities from MTI.

57. As a direct and proximate result of relying on MTI's false representations, NC Capital has suffered damages and continues to suffer damages in an amount to be established at trial.

## FIFTH CAUSE OF ACTION

**(Unjust Enrichment under Illinois Law)**

58. NC Capital realleges and incorporates by reference the preceding paragraphs 1 through 57 as though fully set forth herein.

59. NC Capital conferred a benefit on MTI by investing $2,560,000 in MTI.

60. MTI was aware it received a benefit.

      61.      It would be inequitable, unjust, and/or unconscionable for MTI to retain such a benefit.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff NC Capital respectfully requests relief against Defendant MTI as set forth below:

    A.    For an award to NC Capital of compensatory damages in an amount to be proven at trial;

    B.    For an award to NC Capital of punitive damages in an amount to be proven at trial;

    C.    For an award to NC Capital of pre-judgment and post-judgment interest in the maximum amounts provided by law;

    D.    For an award to NC Capital of its costs and expenses incurred in this action, including reasonable attorneys' fees; and

    E.    For any and all other relief this Court deems just and proper.

## VII.   DEMAND FOR JURY TRIAL

Plaintiff NC Capital demands a trial by jury on all issues so triable.

DATED:  June 8, 2021                    Respectfully submitted,

By:     /s/ Gopi K. Panchapakesan
Gopi K. Panchapakesan (CA 279586)
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
gkp@birdmarella.com
Telephone:  (310) 201-2100

Bilal Zaheer (IL 6291119)
**LOCKE LORD LLP**
111 South Wacker Drive
Chicago, IL 60606
bilal.zaheer@lockelord.com
Telephone:  (312) 443-0700

*Counsel for Plaintiff NC Capital, LLC*